IN RE: )
)
DONALD A. STEINBERG, ) Chapter 7
)
Debtor, ) Case No. 19-16110
) Hon. Deborah L. Thorne
)
) Adversary Case. No.: 19-_____
iPROMOTEu.com, Inc. )
)
Plaintiff, )
)
v. )
)
DONALD A. STEINBERG, )
)
Defendant. )

## COMPLAINT OBJECTING TO DISCHARGE
## AND DISCHARGEABILITY OF CERTAIN DEBTS

Plaintiff, iPROMOTEu.com, Inc., by its attorney, BRANDON G. HUMMEL of

HUMMEL LAW GROUP, complains of the Defendant, Donald A. Steinberg ("Steinberg" or

"Debtor") as follows:

### JURISDICTION AND VENUE

1.      This Adversary proceeding is commenced under Bankruptcy Rule 7001 and Title

11 of the United States Code (hereinafter the "Bankruptcy Code") to declare Debtor's debt to

iPROMOTEu.com, Inc. non-dischargeable pursuant to the following Sections of the Code:

Sections 523(a)(2)(A), 523(a)(4) 523(a)(6), 727(a)(2)(A), 727(a)(5) and 727(c)(1).

2.      This Court has jurisdiction under 28 USC § 1334 and 28 UCS § 157(b)(2)(I).

3.  This is a core proceeding pursuant to 28 UCS § 157(b)(2)(I) arising out of the Chapter 7 case of *In Re Donald A. Steinberg*, No. 19-16110, United States Bankruptcy Court, Northern District of Illinois, Eastern Division (the "Bankruptcy").

4.  Defendant, Steinberg is the debtor in the Bankruptcy and is a resident of Northbrook, Illinois residing at 153 Pointe Drive, Northbrook, Illinois 60062.

5.  Steinberg is the sole owner and President of Pro Star Promotions, Inc. ("Pro Star"), an Illinois corporation duly organized by law, having a usual place of business located at 3014 Commercial Avenue, Northbrook, Illinois 60062.

6.  Plaintiff iPROMTEu.com, Inc. ("iPROMOTEu"), a secured creditor, is a Delaware corporation duly authorized to transact business in Massachusetts and Illinois, having a usual place of business located at 321 Commonwealth Road, Suite 101, Wayland, Massachusetts 01778.

## FACTS COMMON TO ALL COUNTS

7.  IPROMATEu is distributor organization for the promotional products industry. It provides resources and support to independent distributors including order financing, order follow-up, sales and marketing support, an advance payment program, and a network of preferred vendors.

8.  On or about July 16, 2015, Pro Star, and Steinberg (in his individual capacity as affiliate and guarantor), executed and delivered to iPROMOTEu a certain Independent Distributor Affiliate Agreement (US) ("Agreement').

9.  The Agreement established, inter alia, the terms and conditions of payment for the transaction fees (on a sliding scale from 5% to a maximum of 12% based upon sales volume), and a monthly support fee of $250.00, for all transactions processed by iPROMOTEu on behalf of Pro Star. A true and correct of the Agreement is attached hereto and is incorporated by reference as **Exhibit 1**.

10. Terms of the Agreement included:

(a)     Pro Star agreed to instruct all of its customers to pay their invoices directly to iPROMOTEu (Ex. 1, ¶5);

(b)     If Pro Star received a payment a customer, Pro Star agreed to immediately notify iPROMOTEu, and to forward the entire payment received from the customer to iPROMOTEu (Ex. 1, ¶5);

(c)     If Pro Star failed to immediately notify iPROMOTEu of a payment received from a customer or failed to immediately remit such payment to iPROMOTEu, iPROMOTEu could deem such conduct conversion, theft, larceny, larceny by false pretenses, embezzlement or fraud; terminate the Agreement; commence civil and/or criminal proceedings against Pro Star and/or Steinberg; require Pro Star and Steinberg to pay iPROMTEu three times the amount of the payment Pro Star received from the customer or at minimum retain 75% of the amount otherwise payable to Pro Star on each transaction upon which payment from the customer should have been remitted to iPROMOTEu (Ex. 1, ¶23);

(d)     If Pro Star failed to immediately notify iPROMOTEu of a payment received from a customer or failed to immediately remit such payment to iPROMOTEu and iPROMOTEu commenced collection efforts (including legal action against Pro Star, Steinberg, or Pro Star's customers), Pro Star and Steinberg are required to pay iPROMOTEu all of its costs of collection including attorneys' fees and court costs (Ex. 1, ¶23);

(e)     Pro Star and Steinberg granted iPROMOTEu a security interest all of their right, title, and interest in, to and under all customer invoices, accounts receivable, and payments and proceeds relating in any way to any and all orders they submitted to iPROMOTEu for processing and that iPROMOTEu processed on their behalf (Ex. 1, ¶24); and

(f)     Steinberg agreed to personally responsible and liable to iPROMOTEu for fulfilling all performance and financial obligations as well as for any and all loss, damage, cost or expense, including legal fees and court costs and all costs of collection, incurred by iPROMOTEu as a result of any violation of the Agreement (Ex. 1, ¶25).

11.     On May 18, 2016, in accordance with Paragraph 24 of the Agreement, iPROMOTEu filed a UCC Financing Statement with the Illinois Secretary of State identified as Document 21385166 documenting its secured interest in Steinberg's and Pro Star's in their right, title and interest in, to and under all customer invoices, accounts receivable, and payments an proceeds relating in any way to any and all orders submitted by Steinberg and Pro Star to

iPROMOTEu on their behalf. A true and correct copy of iPROMOTEu's UCC Financing Statement is attached hereto as **Exhibit 2**.

12.     The UCC Financing Statement remains on file with the Illinois Secretary of State and has not been released.

13.     Following execution of the Agreement, at the request of Pro Star, and through a series of transactions from November 13, 2005 through October 1, 2018 (the "Transaction Period"), iPROMOTEu rendered services to Pro Star and its customers pursuant to the terms of the Agreement.

14.     During the Transaction Period and thereafter, iPROMOTEu regularly invoiced Pro Star on a monthly basis for the charges made on its account maintained with iPROMOTEu.

15.     The invoices sent by iPROMOTEu to Pro Star contain detailed information regarding each transaction made, including quantity, description and pricing.

16.     IPROMOTEu substantially performed all of its obligations under the Agreement by providing the services and materials fit for the purpose of its transaction it handled for iPROMOTEu.

17.     With respect to the unpaid invoices that form a basis of this Adversary Complaint, neither Pro Star nor Stein ever objected to the accuracy or legitimacy of any of the charges imposed by iPROMOTEu pursuant to the terms of the Agreement.

18.     On strong information and belief, with the knowledge of and at the direction of Steinberg and within a year of filing his Chapter 7 petition for bankruptcy, Pro Star and Steinberg knowingly and intentionally violated the payment terms of the Agreement by delivering monies directly received from customers to Pro Star, to Steinberg or to his immediate family members (i.e., his son Jeffrey Steinberg and/or businesses owed by him) instead of remitting such monies

to iPROMOTEu. – thereby knowingly and intentionally transferring monies owed to iPROMOTEu with the intent to hinder, delay and defraud iPROMOTEu.

19.     As a result of the foregoing acts and omissions, iPROMOTEu, pursuant to the terms of the Agreement, has elected to assess liquidated damages against Pro Star and Steinberg.

20.     As a result of Steinberg's and Pro Star's intentional, fraudulent, willful and malicious acts and omissions, iPROMOTEu has suffered substantial damages in excess of $2.058 million dollars.

21.     Steinberg and Pro Star owed iPROMOTEu the principal sum of $2,058,140.73 as specifically delineated in the Excel Spreadsheets attached hereto and incorporated herein by reference as **Exhibit 3**. This figure includes non-reimbursed vendor costs, transaction fees for services rendered by iPROMOTEu to Pro Star, penalties assessed by iPROMOTEu for non-payment of customer invoices, and interest on the amounts owed to iPROMOTEu.

22.     Pursuant to the terms of the Agreement, iPROMOTEu is also entitled to recover its costs of collection against Steinberg including attorneys' fees, court costs, and prejudgment and postjudgment interest. Ex. 1, ¶24.

23.     On March 4, 2019, iPROMOTEu filed a Verified Civil Complaint against Steinberg and Pro Star in the Massachusetts Superior Court, Middlesex County alleging claims for breach of contract, account stated, quantum valebant and unjust enrichment (the "State Court Action"). The case was given docket number 1981CV00596. A true and accurate copy of the Verified Complaint is attached hereto as **Exhibit 4**.

24.     On May 7, 2019, Steinberg was personally served with the Summons and the Verified Complaint. On June 6, 2019, iPROMOTEu filed its Affidavit of Service on Steinberg

with the Massachusetts Superior Court A copy of the Affidavit of Service is attached hereto as **Exhibit 5.**

25.     On June 5, 2018, Steinberg filed a Chapter 7 Voluntary Petition in the United State Bankruptcy Court, Northern District of Illinois. *In Re Donald A. Steinberg.*, Case. No. 19-16110. The Petition incorrectly lists iPROMOTEu as a non-secured creditor at Schedule E/F, Section 4.1.6 of the Petition. See Doc 1, Page 27.

26.     On July 3, 2019, upon notification of the filing of Steinberg's bankruptcy petition, the State Court Action was stayed.

## COUNT I
## 11 U.S.C. 523(a)(2)(A)

1-26.     IPROMOTEu repeats and incorporates the allegations of Paragraphs 1 through 26 above as if fully set forth herein.

27.     Since Steinberg obtained iPROMOTEu's property under false pretenses, a false representation, or actual fraud, he should be denied discharge as to the debts owed iPROMOTEu pursuant to 523(a)(2)(A).

WHEREFORE, iPROMOTEu.com, Inc. respectfully requests that this Court enter an order finding that Debtor's wrongful actions constitute grounds for the Court to declare Debtor's debts to Plaintiff non-dischargeable, to deny a discharge as to that debt and for any other relief this court deems just and necessary.

## COUNT II
## 11 USC 523(a)(4)

1-26.     IPROMOTEu repeats and incorporates the allegations of Paragraphs 1 through 26 above as if fully set forth herein.

27.     By knowingly and intentionally failing to notify iPROMOTEu of customer payments Pro Star received; failing to remit such customer payments to iPROMOTEu; and using such customer payments for Pro Star's benefit, his own benefit or the benefit of close familial relations (i.e., his son Jeffrey Steinberg and/or businesses owed by him), Steinberg fraudulently appropriated property owned by iPROMOTEu and held in trust for iPROMOTEu's benefit and thereby embezzled and converted such property.

28.     Accordingly, pursuant to Section 524(a)(4), Debtor should be denied discharge as to the debts owed iPROMOTEu.

WHEREFORE, iPROMOTEu.com, Inc. respectfully requests that this Court enter an order finding that Debtor's wrongful actions constitute grounds for the Court to declare Debtor's debts to Plaintiff non-dischargeable, to deny a discharge as to that debt and for any other relief this court deems just and necessary.

## COUNT III
## 11 USC 523(a)(6)

1-26.     IPROMOTEu repeats and incorporates the allegations of Paragraphs 1 through 26 above as if fully set forth herein.

27.     By knowingly and intentionally failing to notify iPROMOTEu of customer payments Pro Star received; failing to remit such customer payments to iPROMOTEu; and using such customer payments for Pro Star's benefit, his own benefit or the benefit of close familial relations (i.e., his son Jeffrey Steinberg and/or businesses owed by him), Steinberg has caused willful and malicious injury to iPROMOTEu.

28.     Upon information and belief, Steinberg had no intention of returning iPROMOTEu's funds and converted them.

7

29.     Accordingly, pursuant to Section 523(a)(6), Debtor should be denied discharge as to the debts owed iPROMOTEu.

WHEREFORE, iPROMOTEu.com, Inc. respectfully requests that this Court enter an order finding that Debtor's wrongful actions constitute grounds for the Court to declare Debtor's debts to Plaintiff non-dischargeable, to deny a discharge as to that debt and for any other relief this court deems just and necessary.

### COUNT IV
### 11 USC 727(a)(2)(A)

1-26.   IPROMOTEu repeats and incorporates the allegations of Paragraphs 1 through 26 above as if fully set forth herein.

27.     Since Steinberg, within a year before filing his Chapter 7 bankruptcy petition sought to hinder, delay and defraud iPROMOTEu by converting and embezzling iPROMOTEu's property held in trust by Pro Star and Steinberg as required by the terms of the Agreement, he should be denied discharge as to the debts owed iPROMOTEu pursuant to Section 727(a)(2)(A).

WHEREFORE, iPROMOTEu.com, Inc. respectfully requests that this Court enter an order finding that Debtor's wrongful actions constitute grounds for the Court to declare Debtor's debts to Plaintiff non-dischargeable, to deny a discharge as to that debt and for any other relief this court deems just and necessary.

### COUNT V
### 11 USC 727(a)(5)

1-26.   IPROMOTEu repeats and incorporates the allegations of Paragraphs 1 through 26 above as if fully set forth herein.

27.     Since Steinberg has not yet been granted a discharge and has failed to explain satisfactorily why he should be granted a discharge with regard to the debts owed to iPROMOTEu

in light iPROMOTEu's allegations contained herein, he should be denied discharge as to the debts owed iPROMOTEu pursuant to Section 727(a)(5).

WHEREFORE, iPROMOTEu.com, Inc. respectfully requests that this Court enter an order finding that Debtor's wrongful actions constitute grounds for the Court to declare Debtor's debts to Plaintiff non-dischargeable, to deny a discharge as to that debt and for any other relief this court deems just and necessary.

**COUNT VI**
**727 USC 727(c)(1)**

1-26.    IPROMOTEu repeats and incorporates the allegations of Paragraphs 1 through 26 above as if fully set forth herein.

27.    Since Steinberg converted and embezzled property owned by iPROMOTEu and held in trust by Pro Star and Steinberg within a year before he filed his Chapter 7 bankruptcy petition, Steinberg should be denied discharge as to the debts owed iPROMOTEu pursuant to Section 727 (c)(1).

WHEREFORE, iPROMOTEu.com, Inc. respectfully requests that this Court enter an order finding that Debtor's wrongful actions constitute grounds for the Court to declare Debtor's debts to Plaintiff non-dischargeable, to deny a discharge as to that debt and for any other relief this court deems just and necessary.

Respectfully Submitted,

**iPROMOTEu.com,
Inc.**

By: */s/ Brandon G. Hummel*
      One of Its Attorneys

Brandon G. Hummel
HUMMEL LAW GROUP
1902 Ivy Lane

Glenview, IL 60026
(312) 599-2806
[bhummel@hummellawgroup.com](mailto:bhummel@hummellawgroup.com)
IL ARDC 6283124
*Attorney for Adversary Plaintiff/*
*Secured Creditor iPROMOTEu.com, Inc.*